IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Farmland Partners, Inc, <br><br> Plaintiff, <br><br> v. <br><br> Rota Fortunae ET Al., <br><br> Defendant. | Case No. 1:18-cv-002351-KLM (pending in the United States District Court for the District of Colorado) <br><br> **<u>Brief In Support Of Motion To Quash Or Modify Subpoena To First Midwest Bank</u>** |

## Introduction

The Court should quash or modify a Subpoena sent to First Midwest Bank broadly seeking financial and banking information about the Movants, who are an individual and two small businesses not parties to the lawsuit in question. The Subpoena was issued by an anonymous Defendant in that lawsuit using the fictitious name "Rota Fortunae."

In the lawsuit, Farmland Partners, Inc. ("Farmland Partners") alleges that Rota Fortunae engaged in a "short and distort" scheme to drive down the price of Farmland Partners' publicly traded stock. Farmland Partners alleges that Rota Fortunae implemented that scheme by making false statements on a financial website and on social media. Farmland Partners asserts claims against Rota Fortunae for defamation, civil conspiracy, and related causes of action.

Rota Fortunae's supposed justification for the Subpoena is that it wants to determine whether the Movants had financial dealings with Farmland Partners or its Chief Executive Officer, Paul Pittman, after January 1, 2017. But the sweeping Subpoena does not focus on those issues. Instead, it broadly asks for information about the financial condition and business dealings of Movants, who are Jesse Hough; Pine Ridge Holdings, Inc.; and Hough Farms. Rota Fortunae's purported rationale for the broad Subpoena is that it needs to sweep in all of that sensitive

information to see if there might be some evidence of dealings—in ways that Rota Fortunae cannot articulate—between Movants and Farmland Partners or its CEO, Paul Pittman.

This unjustified harassment of non-parties should be quashed. If Rota Fortunae's true aim is to determine whether the Plaintiff Farmland Partners and its CEO had any financial dealings with the Movants since January 1, 2017, there is an easy way to seek that information that does not involve a subpoena. It can pursue discovery from the Plaintiff Farmland Partners and its CEO directly rather than harassing non-parties.

If any part of the Subpoena hypothetically were to be permitted, it should be modified so that the requests for sensitive financial information about Movants are limited to documents referring to the Plaintiff Farmland Partners or its CEO. That modification would focus the Subpoena on its supposed rationale. Movants, in fact, proposed just such a limitation in an effort to compromise to avoid having to file this Motion.

Rota Fortunae's purported justification for a broader Subpoena is to speculate that perhaps there are documents or information that do not refer to Plaintiff Farmland Partners or Paul Pittman that somehow are relevant. Supposedly there might be a reference to some company that Rota Fortunae cannot name that might somehow relate to or be "concerning" Plaintiff Farmland Partners or its CEO Paul Pittman. Or supposedly there might be a reference to some bank account number that Rota Fortunae cannot specify that might somehow relate to or be "concerning" Plaintiff Farmland Partners or its CEO Paul Pittman. That speculation cannot justify the intrusive Subpoena to First Midwest Bank seeking sensitive information about Movants. Before sending a Subpoena for sensitive financial information about non-parties, Rota Fortunae should have done its homework through discovery from Plaintiff and its CEO so that it could articulate what it supposedly seeks with reasonable particularity. It failed to do so.

Assuming hypothetically that any production were going to occur under even a modified version of the Subpoena, moreover, it would be crucial to ensure confidentiality of the produced documents in this situation involving a Subpoena sent by an anonymous Defendant residing in an unknown location. If any documents were to be produced, they should be designated "Attorneys' Eyes Only" under the Confidentiality Agreement and Protective Order in the underlying litigation. And Rota Fortunae's identity and location should be disclosed to this Court and to Movants. There is no reason to believe that Rota Fortunae's counsel could detect if their anonymous client violated a Protective Order. And without knowing Rota Fortunae's identity and location, there is no way to determine whether this Court could enforce any violation of this Court's Orders.[1]

## Statement of Facts

**A.      Farmland Partners' Lawsuit Against The Anonymous Rota Fortunae.**

The Subpoena in question issued from a lawsuit pending in the United States District Court for the District of Colorado. That lawsuit was filed by Farmland Partners against the anonymous Defendant "Rota Fortunae" and various Doe Defendants. (*See* Brookhouser Decl. Ex. 1). The lawsuit alleges that Rota Fortunae made statements on the internet as part of a "short and distort" scheme to drive down the price of Farmland Partners' publicly-traded stock. (*See id.*). The lawsuit asserts claims for (1) defamation and defamation by libel per se, (2) disparagement, (3) intentional interference with prospective business relations, (4) unjust enrichment, (5) Deceptive Trade

---

[1] As a suggested compromise in an effort to avoid having to file this Motion, Movants had proposed that any documents to be produced could be designated "CONFIDENTIAL" under the Protective Order if the Subpoena were modified to exclude any financial statements, financial information, or credit analysis of Pine Ridge Holdings, Inc., Hough Farms, or a company called Astoria Farms. Rota Fortunae rejected that proposed compromise that had been offered to avoid motion practice and that only applied if the Subpoena was modified to exclude the information mentioned above.

...

Practice in Violation of the Colorado Consumer Protection Act, and (6) Civil Conspiracy.  (*See id.*).

The lawsuit alleges that shortly before the statements were made on the internet, an attorney for the anonymous Rota Fortunae contacted Farmland Partners stating that he represented a "*group of investors*" who "*have prepared and anticipate publishing* an article" about Farmland Partners and its loan program.  (*Id.* ¶ 9) (emphasis added).

Movants are not parties to the lawsuit in Colorado.

**B.    The Subpoena's Broad Requests About Movants.**

The Subpoena broadly requests the following information about one or more Movants:

> 1.    All documents and communications relating to the Loan [a term that the Subpoena defines as "the $5.35 million loan identified with loan number 73693" made by First Midwest Bank "to Pine Ridge Holdings, Inc. on May 18, 2017"].
>
> 2.    All statements, images, checks, deposit slips, deposited items, account opening documents, records, analyses, and signature cards relating to account number 81-31413, from January 1, 2017 to present.
>
> 3.    All documents, including all statements, images, checks, deposit slips, deposited items, account opening documents, records, analyses, and signature cards relating to any account(s) held by any of the following entities: Pittman Hough Farms, L.L.C., Astoria Farms, Hough Farms, Pine Ridge Holdings, Inc., or Pittman Farms ("Mr. Hough's Entities") from January 2017 to present.
>
> 4.    All documents relating to any loan made by you to any of Mr. Hough's Entities from January 1, 2017 to present to the extent that your file for any such entity has any information concerning Paul Pittman or Farmland Partners Inc. If any of your files for the listed entities have no information concerning Paul Pittman or Farmland Partners Inc. from January 1, 2017 to present, please note that in your response.
>
> 5.    All documents relating to Jesse Hough and that relate to Mr. Hough's or Mr. Hough's Entities' transactions with FPI from January 1, 2017 to present.

> 6. All documents and communications relating to Paul Pittman and that relate to FPI, Mr. Hough or Mr. Hough's Entities' from January 1, 2017 to present.

(Brookhouser Decl. Ex. 2).

The Subpoena defines the terms "Relates" or "relating" as meaning "supports, proves, evidences, describes, is associated with, provides background for, explains, or tends to contradict." (*Id.*).

The Subpoena's Instruction No. 6 states:

> 6. These requests do not seek any personal financial information or personal identifying information for Paul Pittman or Jesse Hough. To the extent such documents exist, you should note their existence and describe such documents in responding to this Subpoena but not produce the documents themselves or share any personal financial or identifying information.

**C.    The Modifications That Movant Jesse Hough Had Proposed In A First Effort To Avoid This Motion.**

In an attempt to avoid having to file this Motion, Movant Jesse Hough had proposed that the Subpoena's document requests be modified to focus on any dealings with Farmland Partners and its CEO Paul Pittman. To give First Midwest Bank a feasible way to determine what documents are responsive, the proposed modifications focus on documents "referring" to Farmland Partners or its CEO Paul Pittman. That would avoid creating uncertainty for the Bank about what documents are "relating to" or "concerning" Farmland Partners or Paul Pittman. That uncertainty is particular problematic here, where Rota Fortunae contends that documents or information might "relate to" or "concern" Farmland Partners or Paul Pittman if they refer to companies or bank account numbers that Rota Fortunae cannot or will not articulate.

Those proposed modifications to the Subpoena's document requests that were offered as a compromise to avoid having to file this Motion stated as follows—***with redlining showing the***

*proposed changes from the Subpoena*:

## DOCUMENT REQUESTS

1. All documents and communications relating to the Loan <ins>to the extent that those documents and communications have any information referring to Paul Pittman or Farmland Partners Inc. If your files regarding the Loan have no information referring to Paul Pittman or Farmland Partners, Inc. from January 1, 2017 to the present, please note that in your response.</ins>

2. All statements, images, checks, deposit slips, deposited items, account opening documents, records, analyses, and signature cards relating to account number 81-31413, from January 1, 2017 to present.

3. All documents, including all statements, images, checks, deposit slips, deposited items, account opening documents, records <ins>to the extent they refer to Paul Pittman or Farmland Partners Inc.</ins>, analyses <ins>to the extent they refer to Paul Pittman or Farmland Partners Inc.</ins>, and signature cards relating to any account(s) held by any of the following entities: Pittman Hough Farms, L.L.C., Astoria Farms, Hough Farms, Pine Ridge Holdings, Inc., or Pittman Farms ("Mr. Hough's Entities") from January 2017 to present.

4. All documents relating to any loan made by you to any of Mr. Hough's Entities from January 1, 2017 to present to the extent that your file for any such entity has any information <ins>referring to</ins> <del>concerning</del> Paul Pittman or Farmland Partners Inc. If any of your files for the listed entities have no information referring to Paul Pittman or Farmland Partners Inc. from January 1, 2017 to present, please note that in your response.

5. All documents relating to Jesse Hough <ins>that refer to</ins> <del>and that relate to</del> Mr. Hough's or Mr. Hough's Entities' transactions with FPI from January 1, 2017 to present.

6. All documents and communications relating to Paul Pittman and that relate to FPI, Mr. Hough or Mr. Hough's Entities' from January 1, 2017 to present.

7. All documents and communications with or relating to FPI from January 1, 2017 to present.

(Hough Decl. Ex. A).

The proposed compromise also provided that all documents to be produced be designated "Attorneys' Eyes Only" under the Protective Order in the lawsuit. (Brookhouser Decl. Ex. 3). If there were particular documents that Rota Fortunae's lawyers thought were relevant and should be shown to their client, they could follow the Protective Order's procedure for requesting a "CONFIDENTIAL" designation.

Rota Fortunae rejected that proposed compromise. The purported reason for the rejection was that there might be documents or information that somehow would be relevant but did not refer to Farmland Partners or its CEO Paul Pittman. (Brookhouser Decl. Ex. 4). Rota Fortunae also refused the proposed method of handling confidentiality issues. (*See id.*).

**D.     The Modifications That Movants Had Proposed In A Second Effort To Avoid Having To File This Motion.**

In a second effort to avoid having to file this Motion, Movants proposed that the Subpoena's Instruction No. 6 be modified so that the Subpoena excluded "any financial statements, financial information, or credit analysis of Pine Ridge Holdings, Inc., Hough Farms, or Astoria Farms." (Brookhouser Decl. Ex. 4). Movants indicated that if the Subpoena were modified in that way, then the produced information could be designated "CONFIDENTIAL." (*Id.*).

Rota Fortunae also rejected that proposed compromise. Its supposed rationale focused on the possibility that Farmland Partners' CEO Paul Pittman was a guarantor or offered collateral or that he was a member of entities. Of course, if that were true, the documents would refer to him. Nevertheless, Rota Fortunae's counsel stated, in pertinent part that:

> As to your proposal regarding the Instructions, we cannot agree to your proposed limitations. As you know, FPI is claiming one of the allegedly defamatory statements in RF's article is RF's opinion that Jesse Hough is a related party. This is a central issue in the lawsuit, and all three of the entities for which you seek to exclude production of "financial statements, financial information, or credit analyses" are highly relevant to this issue.

> Pine Ridge Holdings is the entity that took out the loan in question, and credit analyses for this loan will contain information regarding who needed to be guarantors for the loan and what collateral needed to be put up for the loan, which we believe included Mr. Pittman and/or his assets based on public information indicating Mr. Pittman was a member of Pine Ridge when this loan was taken out. The phrase "financial information" is very broad and arguably subsumes all the information the bank will have. Finally, financial statements will include information like the names of equity interests (in the balance sheet), payouts to members (cash flow statements), and equity raises (cash flow statement), for example. This information is all highly relevant to the related party issue.
>
> The same analysis applies to the other two entities, Hough Holdings and Astoria Farms. Hough Holdings is also recipient of a loan from FPI and a co-borrower with Pine Ridge Holdings. We also have evidence that Paul Pittman was a member of Astoria Farms, or representing himself to be a member of Astoria Farms, even after the agreement to remove Pittman from Astoria Farms.

(Brookhouser Decl. Ex. 4).

Rota Fortunae's counsel further created a lack of clarity about the Instruction No. 6 in the Subpoena by stating:

> I would also like to note that we have agreed to exclude personal financial information of Messrs Pittman and Hough from this to the extent that information is unrelated to FPI and each other. For example, if Mr. Hough received a personal loan from Mr. Pittman or FPI, we believe that information is relevant to this lawsuit.

(*Id.*).

## Argument

**A.     The Subpoena Should Be Quashed Under Fed. R. Civ. P. 45(d)(3)(B)(i).**

Federal Rule of Civil Procedure 45(d)(3)(B)(i) states that a Court in the district where compliance with a subpoena is required may quash or modify a subpoena on a motion to protect a person "affected by a subpoena" if the subpoena would require disclosing "confidential research, development, or commercial information."

It is proper to quash the Subpoena in question under that Rule because it requests the production of confidential commercial information about Movants.  Here, the Subpoena requests financial information, credit information, and financial transaction information since January 2017. (Brookhouser Decl. Ex. 2).  The Subpoena effectively requests all such information about the two Movant entities.  That is because its references to "relating to" or "concerning" Farmland Partners or its CEO Paul Pittman leave the Bank to guess about whether documents are responsive.  That is particularly true given Rota Fortunae's refusal to limit the Subpoena's Requests to documents referring to Farmland Partners or its CEO Paul Pittman.  Rota Fortunae instead speculates that a document might be relevant if it refers to some company that it fails to specify or to some bank account that it fails to specify.  Given that Rota Fortunae is not able—or refuses—to articulate any way to determine whether a document is relating to or concerning Farmland Partners or its CEO Paul Pittman, how is the Bank supposed to decide?  The purported limitations in the Subpoena thus are illusory.

For the same reason, the limitation in Instruction No. 6 about Mr. Hough has little effect.  That is shown by Rota Fortunae's counsel's attempt to back-track when refusing Movant's second proposed compromise to avoid the need for this Motion.

Movants have standing to challenge the Subpoena because they fall within the scope of the Rule quoted above as persons affected by the Subpoena, and they have privacy interests at stake.  *See Companie de Inversiones Merctantiles S.A. v. Grupe Cementose de Chihuahua, S.A.B. DE C.V.*, No. 15-cv-02120-JLK, 2019 WL 8223561, at * 3 (D. Colo. Dec. 31, 2019) (concluding that a party and non-party had standing to challenge a subpoena seeking their bank records at JP Morgan); *see also e.g., Trusz v. UBS Realty Investors LLC*, No. 09-Cv-268, 2009 WL 10689775 (D. Conn. Dec. 12, 2009) (analyzing standing and collecting authority); *Solow v. Conseco*, Case

No. 06 Civ 5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) (granting motion to quash a subpoena seeking documents about lending, assets, and financial plans); *Arias-Zeballos v. Tan*, 06 Civ 1268 (GEL) (KNF), 2007 WL 210112, at * 1 (S.D.N.Y. Jan. 25, 2007) (granting motion to quash a subpoena seeking documents about the acquisition of real estate); *Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993) (holding that a subpoena seeking financial information should be limited to nine specific documents rather than the five boxes of documents sought by the subpoena).

Any balancing comparing Movant's protectable interests and the purported relevance, moreover, weighs strongly in favor of quashing the Subpoena. The supposed relevance involves transactions or activity by Plaintiff Farmland Partners and its CEO Paul Pittman. But Rota Fortunae does not need the Subpoena focused on non-party Movants to get that information. It instead can get the information directly from Plaintiff Farmland Partners and its CEO Paul Pittman.

Furthermore, if there were any hypothetical argument for a focused inquiry, Rota Fortunae should have done its homework so that it could articulate with reasonable particularity what documents supposedly are relevant. It has not done so. And it should not be able to harass the non-Party Movants because of its speculation or because of whatever else might have motivated the Subpoena.

**B.    If Any Production Were To Be Permitted, Then The Subpoena Should be Modified As Provided in Ex. A to the Hough Declaration, and Rota Fortunae's Identity And Address Should Be Disclosed To The Court and Movants.**

If the Subpoena were going to be permitted at all, it would be proper to modify it as indicated in Exhibit A to Jesse Hough's Declaration being submitted with this Motion. Those modifications focus the requests on documents referring to Paul Pittman or Farmland Partners. (*See id.*). Those limitations correspond to Rota Fortunae's supposed arguments for relevance. Any

speculation by Rota Fortunae about the need to wade through the documents to see if it can identify anything of relevance that does not refer to Paul Pittman or Farmland Partners has no weight. Rota Fortunae can attempt to explore those speculative issues through discovery from Farmland Partners or Paul Pittman.

Furthermore, the anonymous status of Rota Fortunae raises significant concerns. It is not known who Rota Fortunae is, or where they are located. And Rota Fortunae is being sued in the underlying lawsuit for defamation and related claims involving statements made on the internet. Accordingly, there are significant reasons to be concerned about the anonymous Rota Fortunae gaining access to the sensitive commercial information in question.

And there is no reason to believe that Rota Fortunae's counsel could detect whether Rota Fortunae violated any Confidentiality Order.

Nor is there any way to determine if any court could enforce remedies for violation of a Confidentiality Order against an anonymous party whose location is unknown.

If the Subpoena were going to be permitted at all, it therefore also would be proper to Order (a) that the documents produced should be designated as Attorneys' Eyes Only under the Confidentiality Order in the underlying litigation, and (b) Rota Fortunae's name and address must be disclosed to the Court and Movants so that this Court knows who is seeking to subpoena records in this District and so that this Court's Order can be enforced against Rota Fortunae through contempt or other appropriate remedies if there is a violation.

Nor does Rota Fortunae have any right to remain anonymous while affirmatively seeking discovery from a non-party. In meet-and-confer discussions when Movants tried to avoid the need to file this Motion, Rota Fortunae's counsel contended that Rota Fortunae had a First Amendment right to remain anonymous. The Colorado Court can decide whether Rota Fortunae has a defensive

right to remain anonymous in defending claims. But in going on the offense to affirmatively seek discovery from a non-party, Rota Fortunae should be held to have waived any such contention.

In this regard, the Seventh Circuit's decision in *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753 (7th Cir. 2007), is highly instructive. In that securities lawsuit, the plaintiffs relied upon confidential sources in their Complaint. The Court concluded that any such source must be heavily discounted because, among other things, perhaps the anonymous sources "are lying" and perhaps "they don't even exist." *Id.* at 757. Significantly for current purposes, moreover, the Court emphasized that their identity would have to become public if the case moved to discovery.

Judge Easterbrook stated emphatically: "Not that anonymity is possible in the long run. There is no 'informer's privilege' in civil litigation." *Id.* To the contrary, as he emphasized, the identity would become known in discovery. That conclusion applies with even further force here, when the anonymous Rota Fortunae has gone on the offensive to harass non-parties with a Subpoena to their Bank.

C.      **Rota Fortunae Cannot Meet Their Burden Under Fed. R. Civ. P 45(d)(3)(C).**

Federal Rule of Civil Procedure 45(d)(3)(C)(i) states that in the conditions described in Rule 45(d)(3)(B)—which apply here as discussed above—the court may, instead of quashing or modifying a subpoena, order production under specified conditions if the serving party "shows a substantial need for testimony or material that cannot be otherwise met without undue hardship."

Here, the serving party—anonymously described as "Rota Fortunae"—cannot meet its burden of showing that there is "a substantial need" for "material that cannot be otherwise met without undue hardship."

Rota Fortunae's argument for relevance is speculation that some of the documents in question may show involvement in transactions by Farmland Partners or its CEO, Paul Pittman.

(*See* Brookhouser Decl. Exs. 3 and 4). But Rota Fortunae can explore those issues by seeking discovery from Farmland Partners—which is a party to the lawsuit—or from Paul Pittman, Farmland Partners' CEO. That speculation about issues that can be investigated through discovery from a party or from that party's CEO thus cannot meet Rota Fortunae's burden.

## Conclusion

Movants respectfully request that the Court enter an Order Quashing the Subpoena. Alternatively, they request that the Court Modify the Subpoena and Order that any production must be only on specified conditions, including that any produced documents be treated as Attorneys' Eyes Only and that Rota Fortunae's identity and address be identified to the Court and Movants.

DATED: April 10, 2020                               Respectfully submitted,

**HEPLERBROOM LLC**

By: */s/ Stephen R. Kaufmann*
     Stephen R. Kaufmann, #3126728
     4340 Acer Grove Drive
     Springfield, IL 62711
     (217) 528-3674
     (217) 528-3964 - Facsimile
     srk@heplerbroom.com

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 10th day of April, 2020, a true and correct copy of the foregoing document was served upon the following via electronic mail, and/or U.S. Mail, postage prepaid:

| | |
|---|---|
| Katherine Anna Roush<br>John Andrew Chanin<br>Foster Graham Milstein & Calisher, LLP<br>360 South Garfield Street<br>6th Floor<br>Denver, CO 80209<br>303-333-9810<br>Email: kroush@fostergraham.com<br>jchanin@fostergraham.com | Michael D. Birnbaum<br>Morrison & Foerster, LLP-New York<br>250 West 55th Street<br>New York, NY 10019<br>212-468-8000<br>Fax: 212-468-7900<br>Email: mbirnbaum@mofo.com |

             */s/ Stephen R. Kaufmann*